The Chief Judge has stepped off the bench momentarily, but you can hear what's going on, so we will proceed. So, Mr. Cameron, when you're ready, you can begin. Your Honor, as may it please the Court, I'm John Cameron. I represent Mr. Early King and his appeal before this Court. Before the Veterans Court, we had expected to receive a review of the factual questions surrounding whether the Board had stated adequate reasons or basis for its conclusion that he had not filed an earlier effective date, earlier effective claims, and was entitled to earlier effective dates for his granted claims for schizophrenia. Instead, at that Court, we believe that the Veterans Court misinterpreted the regulation at 3.115, excuse me, 155A and that Court's rule in Bell v. DeWinski. We believe that the Veterans Court added three improper requirements to the regulation in that that Court required that Mr. King submit new evidence with his claims in 1995 and 1997. Secondly, that he file his claims to reopen at the VA Regional Office. Thirdly, that Mr. King prepare and file his own writing to establish his claim. But at the end of the day, I mean, I'm struggling with the jurisdictional question. Because at the end of the day, it seems to me the Veterans Court really did look at everything that happened and said there was no intent here. And we, you would agree, would you not, that we don't have the jurisdiction to review their findings with respect to intent? Intent, the Veterans intent to file a claim? Yes. I think that the Veterans Court did find intent. I think that if we look at the… They found there was no intent to file a claim. Right, but I think that at page 17 of the decision, the Court refers to Mr. King's statements expressing a wish or desire to obtain a service connection recorded in his medical records on page 17 in the first paragraph. Now, I think that the Court recognized that he filed his… These writings were filed and they expressed a wish or desire for service connection. So, I think that that by itself meets the three requirements in the regulation. Now, the Court… I'm sorry, I don't… Page 17 of the appendix. Appendix. It says, the record says he wants to file a claim. You know, I want to win Wimbledon. That doesn't mean I intend to even try. There's a lot of ambiguity in that statement, isn't there? Your Honor, I think that it's sufficient to evidence his belief that he's entitled to that benefit. But that's a question of fact that we really have no jurisdiction to resolve. Correct? Well, it's true that you don't have jurisdiction to resolve the question of fact. But I think that the evidence… I think that the Court recognized that he filed these written statements and that he expressed his desire for service connection. Yeah, but that's a question of fact as to what this evidence shows or fails to show. That we can't revisit. Am I not correct? Well, that's true. That's true, Your Honor. We can't revisit a factual question at this point. But I think the primary basis for the denial was that he filed his claim at the wrong office. It was primarily a legal question. Did the Veterans Court really so hold? Well, I think that the Veterans Court… I don't think they established any holding or rule as to where the claim must be filed. In fact, you might want to look at footnote 3 because they explicitly say, although we do not reach the issue in this appeal, and then they opine on it. But it seems like, based on the language of the footnote, they clearly did not reach the issue of whether or not they could file with a VA medical professional. Right? Your Honor, that's correct. How do we avoid that? Right, Your Honor. That's what the footnote says. But I think that the substance of the text of the decision is not consistent with that. I think that even Judge Hagel's dissent, in his opinion, recognizes that the basis… he believed the basis of the decision was that the written claim was filed at the wrong part of the VA. Thank you. At this time, I'd like to reserve my time for… All right. Thank you, Mr. Cameron. You may do so. Thank you. Mr. Frunk. May it please the Court. Affirmance here rests upon the Court's recognition of only two propositions. First, that there was no error in the Veterans Court's decision, an affirmance of the Board's decision that Mr. King did not show, did not manifest the requisite intent to reopen a previously denied claim. And second, that this Court does not possess jurisdiction over Mr. King's alternative argument, that the Veterans Court erred by explicitly considering documents that, although before the Board, were not explicitly considered as part of the Board's decision. Can I ask you a question about the language of the regulation? Because I struggled with it. This is the 155. Is it the government's position that the communication referred to here has to be in writing? Yes, Your Honor. That's also this Court's holding in Rodriguez. But what does that mean that it has to be in writing? If somebody goes up to the RO's office, to the Veterans Office, the Veterans Administration Office, and says, I'm interested in filing an informal claim, and the person sitting at the window writes down, Mr. So-and-so has come in and said he is interested in filing an informal claim, would that be sufficient because there's writing by someone but it's not writing by the claimant? In certain circumstances, yes, Your Honor. The regulation contemplates that the informal claim may be submitted by someone other than the veteran, not a medical professional. But here the person isn't submitting the claim. So you're saying it can be in writing, that person who's the clerk at the Veterans Administration Office would be one of these duly authorized representatives? Well, it would be up to the board to decide whether the intent were shown, but would it be possible for someone other than the veteran to submit the writing? Presumably yes, Your Honor, because the regulation allows for people other than the veteran, those named individuals, to submit the claim. But I don't see where that necessarily would include this person. Everybody has been talking back and forth about the communication, the reference to the word communication in 155, but nobody has mentioned or action. Actions generally are not in writing, correct? Is there any case law or a government position on whether action is indeed broader than any written communication? Actions could be in writing, Your Honor, respectfully, but again, this court in Rodriguez squarely held that an informal claim must absolutely be in writing. So that determination as to whether a communication or an action must be in writing, this court's already made that decision in Rodriguez. So regardless of whether it's a communication or an action, at some point, it must be in writing for it to constitute an informal claim. But the in writing is you, I mean, in this case, in this instance, if he had said to the VA medical professional, I want to file a claim, I want to file an informal claim, please put that in the record and let's proceed with that. And the doctor says, okay, and he writes that down. Are you saying that's an insufficient writing because he's not listed here? Well, yes, Your Honor. VA policy actually would direct the medical treating professionals to refer that veteran to the benefits portion of the VA. So the hypothetical shouldn't actually ever take place. But yes, Your Honor, I mean, the regulation lists specific individuals who are allowed to file a claim on behalf of a veteran and a medical professional is not listed as one of the individuals. Well, nor is the clerk at the VA office. And so the first hypothetical I gave you where somebody gets in and says, I'm here to file an informal claim and the person who's authorized to accept informal claims writes down, Mr. So-and-so is hereby filing, came and told me that he wants to file, is that a sufficient writing? It's in writing. It's just not written by him. Probably not. And, of course, 3.155, Your Honor, and I apologize if I misspoke earlier. But, no, I mean, that individual is not listed in the regulation, so it's hard to see how that could comply with the regulation. And, of course, here, as the court noted in footnote 3 of the veteran's... But it can be any person acting as a friend. Why wouldn't the professional at the veteran's administration hospital be acting as a friend? Respectfully, Your Honor, that regulation concludes, as next friend of a claimant who's not sui juris may be considered. So for the friend to apply, the veteran must not have the capacity him or herself to apply, which is what sui juris means in this context. So potentially there could be a situation where there were a veteran who was sui juris who then the clerk could file the claim. But why is this regulation going to allow you to write your congressman and not write your medical professional at the veteran's hospital? Well, respectfully, Your Honor, it's perhaps because the veteran's administration has 5.5 million some patients that it sees on an annual basis, and that the idea that a claim, a certain statement made to a medical treatment professional would in itself constitute an informal claim in all circumstances, particularly when it's a simple desire for benefit, it's untenable. Okay, well, but that's... Excuse me. But we were talking before about writing versus oral. What about if this claimant had given his psychiatrist in this context a note that says, so it's in writing, we passed the written part of it, I want to file an informal claim. That would be adequate, right? Notwithstanding that he gave it to the VA medical professional as opposed to somebody in the front office, right? That would be a decision for the board, Your Honor. Has anybody decided that yet? I mean, the board said in that footnote three, the Court of Veterans Claims says in the footnote three, we're not deciding whether the VA medical professional is the right person, whether that's sufficient. Has anybody decided that? Does the government have a position on that? In regard to that question, yes. And I don't believe the veterans court or this court has decided that question, which is why I'm hesitant to take a position upon it. But they have allowed a private physician's statement to qualify, right? The veterans court in the case of Richardson versus Shinseki just in March of last year allowed a private physician's statement to a written statement to qualify as an informal claim. Is that correct? I am not familiar with that case, Your Honor. It's not so important. That's a little independent research. What would the statement have had to say? You heard me hypothesizing with Mr. Cameron that a statement that I want to file a claim may not be a statement of intent. But what would it have to say to express an intent to file a claim? Well, the easiest answer, Your Honor, is what the claimant did on May 15, 2000, which was submit a written correspondence to the benefits portion of VA asking. But we're in the area of informal claims, and those are any communication or any action which indicates an intent. What more would he have had to do here? Had he submitted a note to his RO indicating an intent to open up a claim, that would have done it, Your Honor. And again, these are all board decisions, so it's tough to speculate. Again, and this court doesn't reach the issue of whether you can ever do it to a medical professional, although the regulation provides it, probably not. In terms of what he would have had to do, certainly had he gone to his RO and indicated an intent in writing he wanted to reopen. I'm asking you, what words does he have to use to indicate that intent in your mind? I presume you agree with the idea that I want to file a claim is not enough. Not enough, certainly not enough in the context of a treatment with a medical professional. Speaking to his RO, I want to reopen my claim, that could do it, Your Honor. But again, this was given to a medical professional, and that decision first and foremost. He says, I'm here today to file a claim. Depending upon to whom he made that statement, then the board could very well find that that was intense, it must also comply with the written requirement. But again, that would be a factual consideration by the board. First person he sees at the desk and says, I'm here to file a claim. Could you make a note? Or what if he doesn't ask for the note, he just says, I'm here to file a claim, and that person writes that down and says, you know, take a seat and someone will be with you in ten minutes. Is that enough? Potentially the board, depending upon all the facts of that, Your Honor, which it's difficult to answer based upon that, potentially, maybe, Your Honor, that there would be a way to submit a written document or to have someone take a note that went to the RO at some point that could constitute a formal claim. I thought you said earlier that it had to be either a note written by him or one of the categories of people identified in the rule. And that's what I was about to say, Your Honor. But again, that runs into the problem that it wouldn't be submitted by one of the people identified in 3.155. The court here, again, didn't specifically say that 3.155 prohibited someone else from doing it. It explicitly didn't reach that holding. So this court need not reach that question either, but potentially it could involve other people, which is what the court recognized, but it's not here and it doesn't apply to this medical professional. The second question raised by Mr. King is that is whether the Veterans Court erred by explicitly considering documents that were not explicitly considered by the board but were considered by the board. Respectfully, this court does not possess jurisdiction over that issue because it involves an application of law and facts. Specifically, whether the Veterans Board decision stated an adequate reason and basis. Even putting that aside, the first mention of these explicit medical records occurred to the court, not before the board. It's not surprising that the court was the first entity to mention them. Given that they were before the board and that the court simply affirmed the board's decision that there was no record evidence including these records, that showed the requisite intent to file an open claim, even if the court were to possess jurisdiction over that issue, the Veterans Court decision should be affirmed. Are there no further questions, Your Honor? Could I just clarify? You said the 95 and the 97 statements were not presented to the board at all? They were part of the medical records, Your Honor, but identifying those medical records from all the other records is saying, board, particularly in these two documents, I submitted an informal claim. That wasn't done, Your Honor. It was just a collection of records that was submitted. Thank you. Thank you. Mr. Cameron, you have nine minutes remaining if you need to use it. Thank you. In addressing Judge Lynn's question earlier, I think that the court made its decision as a matter of law. I think that the court addressed not necessarily the veteran's intent in filing his writing or his claim, but the court was primarily concerned in the VA's subjective understanding of what the claim was. Let me try to give you some history. When Mr. King filed his original pro se claim in 1992, he filed his formal, his VX-19, at page 110 of the record, the appendix, and he said, I was a cannon crewman, and what I think made me bad off in my mind was one day in laying down on the mortar in front of the big gun, and they shot it, and I became shell-shocked. So his theory of service connection was that his mental problem was due to that incident that happened in service, that he became shell-shocked. Now, the board recognized that in its decision in 1994, but it denied the claim. Then in 1995, in March 1995, he goes back to the same VA office. It just happened to be the medical center where he filed his original claim, and he told the VA person, who happened to be a treating provider, the same theory, and he said, I came back from service different than when I went. I'm not service-connected now, but I'm trying. Then he said, I hear voices of depression, and he said, I'm shell-shocked from being in front of a gun, at 129 of the appendix. So he raised the same theory of service connection the year after the board's 94 decision. And so, under the regulation, under 155A, a writing was filed in the VA's records in 95 and 97, and that writing informed the VA that Mr. King thought he was entitled to VA benefits, and he identified the VA benefit that he was claiming because he gave them the same theory of service connection as his original claim. So I think that the Veterans Court considered this case, but it didn't really consider, didn't make the finding on Mr. King's intent. The court was concerned about the VA's subjective intent, and in making that finding, the VA, I mean, the Veterans Court misinterpreted and ignored its decision, its rule of law in Bell v. Jawinski, where that court had held that those documents that are in the VA medical files are actually or constructively in the VA claims file. What relevance is the VA's intent? I'm sorry, Your Honor. What relevance is the VA's intent? The VA's what? The VA's intent. I don't think there is any relevance to it. I think that as an issue that the court— I thought you said a moment ago what this was all about was— Not the VA's intent. It's the Veterans' intent, whether he filed a claim or not. I see. Well, maybe I misheard what you said. Right. But I think that the Veterans Court was primarily concerned with the VA's subjective intent, whether they understood the writing to be a claim. Was the VA going to understand that this writing, this document, raised Mr. King's belief or entitlement to VA benefits and described the benefit that he was claiming? So, do you see what I'm— I don't think that the court was that concerned. I don't think they really addressed the Veterans' intent that was required under the regulation. I think that the findings, though— I mean, I think that the substance of the Veterans' Court's decision recognized that the March 95 and the 1997 medical records filed at the VA recorded Mr. King's statements, which expressed his wish or desire to obtain service connection for his mental disability. So, I think that his intent was clearly recorded in those written records. And the real reasons that the Veterans' Court affirmed this decision was because he didn't file it in the right office. He didn't file it with the VA regional office. He filed it with the VA medical center. And we raised the issue that under bail, it doesn't really matter which office he files it in because anything filed in the medical center is constructively before the VA regional office and the board. So, I think that the Veterans' Court's decision was based on its misinterpretation of law and its failure to consider its rule of law in Bail v. DeWinski and creating the requirement that he file his writing or communicate his intent to the VA regional office as opposed to the VA itself. And the other question about the person who can file the claim, I think that in this case, Judge Hagel said in his dissent that Mr. King himself filed his statement of intent to reopen when he informed the VA employee and she or he recorded in the medical records that were maintained in the VA. All right. Thank you, Mr. Kammerer. Anything further? I don't have any further questions. Thank you. Unless you have specific questions. Our last case this morning is J.S. Products v. Stanville.